WILLIAM SILVER & CO., INCORPORATED, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 9708. Promulgated March 13, 1928.

*Robert N. Anderson, Esq.*, for the petitioner.
*A. George Bouchard, Esq.*, for the respondent.

OPINION.

TRUSSELL: The first issue relates to a claim by petitioner for a deduction from gross income on account of amortization under section 234 (a) (8) of the Revenue Act of 1918.

The chief item in the claim arises from an office building which was erected to take the place of one destroyed by fire. Petitioner claims the right to a deduction of the excess of the total cost over the replacement value in 1921, 1922 and 1923.

We have discussed before the general purpose of the amortization allowance, see *Moore Investment Co.*, 2 B. T. A. 579; *Walcott Lathe Co.*, 2 B. T. A. 1231; *Manville Jenckes Co.*, 4 B. T. A. 765; *American-Hawaiian Steamship Co.*, 7 B. T. A. 13; and *John Polachek*, 8 B. T. A. 1, and we will not extend this report by a repetition thereof. In the instant case we are considering solely the year 1918. The office building was not begun until as late as October, 1918, nor was it fully completed until the spring of 1919. One witness testified that the amount of the deduction for amortization claimed in the return for 1918 was based upon the cost according to the books on December 31, 1918, amounting to approximately $7,200, which is less than one-third of the total cost. After making full allowance for the probability that the construction of the office building had progressed somewhat further than the books indicated on December 31, 1918, and also allowing for the possibility that the office building may have been used by petitioner prior to the completion in all of its details, we are, nevertheless, confronted with the impossibility of finding from the record that the building was actually used during any part of the calendar year 1918. In *Hawaiian Steamship Co.*, *supra*, we held that " the purpose of the statute was clearly to allow the deduction for amortization against war income which was produced while the amortizable asset was an income producing factor."

Viewing the amortization period during which allowances would be applicable for the office building as beginning with the day when the building became of use, we are not satisfied that any part of the amortization period fell within the calendar year 1918. This is sufficient for a conclusion that respondent should be sustained without going into the question of the amount, if any, of amortization allowable on this building, which, as a matter of fact, was constructed and was used largely for purposes other than the production of articles contributing to the prosecution of the war.

The cost of a small shed or building and of several articles of equipment are detailed in the findings of fact. The assets were never definitely abandoned and there is no satisfactory evidence of their salvage or useful value. Respondent sustained.

The second issue relates to a computation of the profits taxes under section 303 of the Revenue Act of 1918, providing as follows:

That if part of the *net income* of a corporation is derived (1) from a trade or business (or a branch of a trade or business) in which the employment of capital is necessary, and (2) a part (constituting not less than 30 per centum of its total *net income*) *is derived from a separate trade or business (or a distinctly separate branch of the trade or business) which if constituting the sole trade or business would bring it within the class of "personal service corporations,"* then (under regulations prescribed by the Commissioner with the approval of the Secretary) the tax upon the first part of such *net income* shall be separately computed (allowing in such computation only the same proportionate part of the credits authorized in sections 311 and 312), and the tax upon the second part shall be the same percentage thereof as the tax so computed upon the first part is of such first part: *Provided,* That the tax upon such second part shall in no case be less than 20 per centum thereof, unless the tax upon the entire *net income,* if computed without benefit of this section, would constitute less than 20 per centum of such entire *net income,* in which event the tax shall be determined upon the entire net income, without reference to this section, as other taxes are determined under this title. The total tax computed under this section shall be subject to the limitations provided in section 302. (Italics supplied.)

Petitioner contends that the brokerage business of the parent corporation was a distinctly separate branch which standing alone would be classified as a personal service corporation. The requirements for a personal service classification under section 200 of the Revenue Act of 1918 are threefold: (1) The income of the corporation must be ascribed primarily to the activities of the principal owners or stockholders. (2) Such principal owners or stockholders must themselves be regularly engaged in the active conduct of the affairs of the corporation. (3) Capital (whether invested or borrowed) must not be a material income-producing factor. Taking up for consideration the stockholders, we find there were but six during the taxable year and five of them held 450 shares out of the 2,000 shares of capital stock outstanding. Four of them, even though inclusive of the president and the vice president, were inactive in the affairs of petitioner. The fifth, the secretary, was engaged in another business and we are not satisfied that he gave his time and energy in substantial measure to the affairs of petitioner. In our opinion the aggregate and the character of the inactive stockholding interest are so important as to eliminate petitioner from classification as a personal service corporation. Cf. *Matteson Co.* v. *Willcuts,* 12 Fed. (2d) 447.

There are further grounds for sustaining respondent, but, in view of our conclusion above, it is unnecessary to do more than mention them.

We have italicized the references to net income in section 303 in order to bring out clearly the vital necessity of accurately ascertaining the net incomes attributable to the separate businesses. The net income claimed by petitioner attributable to the brokerage business is far from accurate for it includes intercompany transactions with the subsidiaries, and, furthermore, expenses aggregating $22,062.72 are apportioned and deducted pro rata on a basis of the respective gross profits incorrectly computed. We are left to conjecture what were the expense items entering into the aggregate and what were their relations to gross profits. We do not feel at liberty to accept the conclusion of petitioner that it was impossible to charge these expenses directly to some proper designation. Cf. *Johnson Undertaking Co.*, 8 B. T. A. 1182.

The revenue agent's report dated May 1, 1923, submitted in evidence by petitioner, shows that the parent corporation had a net income in the amount of $13,674.23 for the year 1918, and that the affiliated group had a total net income in the amount of $63,901.52 which for all practical purposes was the income of the petitioner parent corporation. The subsidiaries did not declare dividends, but at the end of each year transferred all their profits and/or losses to the books of the parent company. The parent company which was engaged primarily in the conduct of the brokerage business had a net income which amounted to approximately 21.3 per cent of the total net income of the entire business of the affiliated group and such percentage is less than the 30 per cent required by section 303 of the Revenue Act of 1918.

Upon all the facts and circumstances of record we are of the opinion that petitioner is not entitled to the benefits of section 303 of the Revenue Act of 1918. Cf. *J. H. Lane & Co.* v. *United States*, 62 Ct. Cls. 721.

Relative to the third issue, it is in evidence and uncontroverted that payments of taxes made by petitioner for the year 1918 aggregated $10,713.13. It appears that in computing the amount of the deficiency in dispute, respondent credited an amount of $4,751.93 as the original assessment and apparently he has made no further credits or deductions for the full amount of $10,713.13 paid. Respondent should correct that apparent mathematical error or else show to the Board, in his recomputation made pursuant to this decision, that all proper credits have been given for the amount of $10,713.13 taxes paid.

*Judgment will be entered upon 15 days' notice, pursuant to Rule 50.*